We'll move to the last one, Carey versus the Department of Corrections. Okay, Mr. Vogel, before you start, I want to thank you, Ms. Warner, for being here and for taking up, you know, the responsibility of representing the department on short notice, okay? We very much appreciate it. You can communicate back to the Attorney General's office that when an attorney is ill, in a week or more before an oral argument, you know, it's time to start talking about whether maybe someone else can handle the case. And it's really not helpful to get a last-minute motion that says, you know, I've been sick for more than a week and now it looks like I might not be able to do this. Can you continue this argument? I understand emergencies arise. We have a case set for tomorrow where one of the attorneys was in a bicycle accident and got hit by a car and has surgery scheduled. Obviously, that's a different situation. But I want to thank you for being here this morning, okay? Thank you. I appreciate that very much. Okay, Mr. Vogel and Ms. Salinas, thank you also for being here. Mr. Vogel, we'll start with you. Good morning, and may it please the Court, my name is Max Vogel. I'm here with Melissa Salinas at counsel table on behalf of Mr. Demetrius Carey. When Demetrius was a 14-year-old boy, he was arrested, convicted, and sentenced to life in prison after being found guilty of an offense that should not have been presented to the jury. The jury's bizarre verdict here flouted the evidence at trial. Okay, let's talk about something. The certificate of appealability raises this prejudice issue, right? But both sides, it appears to me, have also briefed the issue of deficient performance. And the panel can expand the certificate of appealability on its own to cover deficient performance. Do you have any objection to us doing that? I do not object. It's in the briefing, but I will be folks starting with the issue of prejudice here. Well, I think there may be problems with the district court's analysis of prejudice, so it will be important to me to talk about deficient performance as well, because I'll just tell you where I'm coming from on that. If I'm a defense lawyer, and my client is facing a more serious charge, and the possibility exists, and look, the evidence, I fear, as the defense lawyer, is going to be sufficient to go to the jury on that higher charge. My client could get convicted on that higher charge. I'm going to feel hard-pressed not to ask the court for a lesser included instruction, so that if it's a close case, my client at least might have the possibility of being convicted on that charge. Because the jury looks at this, and they say, we've got a dead victim here. And if they only have one option, and the evidence the trial court thinks is sufficient to sustain a conviction on that option, I'm really risking a lot for my client. So here, there's no situation where the jury would only have one option. We know that they would have been instructed on not just the indicted offense of first-degree murder with a firearm, but the lesser offenses of second-degree murder with a firearm of manslaughter. And the error comes from the defense counsel requesting an instruction for something that is unsupported by the evidence, and that only served as a basis to find his client guilty of an offense, of a new offense that the jury should not have been able to consider. And here, it provided no strategic benefit to make that request, specifically because any – Well, the lesser included here is second-degree murder, period, right? The lesser included in question, the court was – about the trial court was going to give the instruction for second-degree murder with a firearm. And so at court – What was – the instruction that was given isn't about with or without a firearm. It's just second-degree murder, isn't it? The instruction that trial counsel requested states – I'm talking about the one that's given. The one that's given includes the language of both the second-degree murder with a firearm and second-degree murder – The record shows that the trial court was going to give the instruction without the other offense, without the element of the use of the firearm. So the trial court was hesitant. They were assuming that the language without a firearm language would not be given, specifically because it's not supported by the evidence. And the prosecution at trial agreed. They were pushing back on that, explaining multiple times that no evidence supports giving that instruction. Ultimately, defense counsel persisted in requesting that instruction, and that is where the deficient performance arises from. And it's entirely interwoven with the problem of prejudice because there was no strategic merit to this request, and because there is a reasonable probability of a different result at trial without having made this request and without the jury having been presented with that instruction, which satisfies Strickland. Here, it's important to consider the bizarre nature of the jury's verdict and the weakness of the state's case against Demetrius to assess what is reasonably probable to have occurred without this instruction. When I looked at the Florida law, that is to say the standard jury instructions, and the schedule of lesser included offenses, it seemed pretty clear to me, and tell me if you think I have this wrong, that robbery without a firearm would be a lesser included offense of the greater with the weapon. And so, to the extent the lawyer asked, defense counsel asked for an instruction on that, wouldn't it have been legal error for the judge to refuse to give that instruction? I'm talking about robbery with or without a firearm. Yes, and that's precisely the basis of where the deficient performance arises from because since the trial counsel had requested that instruction, that's the reason the court gave the instruction, and it's an instruction that gave the jury a new basis to find Demetrius guilty. We know that the jury acquitted... So, are you saying it was legal error for the judge to give the instruction on the lesser included on robbery, even though Florida law seems to permit that, seems to require that? No, I'm arguing that it was the error arose from the deficient performance of counsel in requesting this instruction. So, we know that... Why was counsel deficient in requesting that? I guess that's what I'm not quite getting. Because it had no strategic merit to his client, it was not a reasonable strategic decision, and it resulted in the jury finding Demetrius guilty of this offense that they obviously would not have been able to find him guilty of without that verdict form being presented to them. Help me with murder, with or without a firearm. Wasn't there at least a tactical reason why defense counsel would want to get that lesser included? No, any strategic benefit would be illusory. His client would still be exposed to the same risk at sentencing of a life sentence. That's what he received as a practice matter. Help me with this on Florida law. Wouldn't it have been mandatory in one case and precatory in the other? That is to say, if it was the lesser included, it wasn't mandatory life, whereas if it was the second-degree murder with a weapon, it would have been mandatory? No, because Mr. Carey was a juvenile at the time, which changes the sentencing risk for the first-degree murder charge as well. And we know that the state's case was not strong enough to prove Mr. Carey's guilt beyond a reasonable doubt of first-degree murder. We know it was not sufficient to prove beyond a reasonable doubt guilt of second-degree murder with a firearm because the jury acquitted of both of those instructions by law under State v. Sanders. But mandatory life for a juvenile offender is not something that the Supreme Court had yet determined was unconstitutional, right? Well, that's correct. So the lawyer would have had to anticipate that change in constitutional law? No. I mean, the benefit here still would be an illusory benefit. The sentencing risk was- If it's mandatory versus not? As a practical matter, we know that he was sentenced to life in prison. Right, but what we're doing is we're asking the question in a temporal sense, at the time the trial lawyer for the defendant made the request for this instruction. At that point, couldn't a reasonable defense lawyer have said to himself, if I get it busted down to a lesser included, my client does not face mandatory life, whereas otherwise, if he's convicted, he does. Wouldn't that be arguably a reasonable thing that a defense attorney could have done? Trial counsel is also obligated to assume that the jury will follow its oath. We know that that's a requirement to assume that at this posture under Strickland, and we know that there was no evidence supporting the idea that Mr. Carey did not use- The trial court thought there was sufficient evidence, and it actually went to the jury, right? That's correct, but for the totality of the instructed offenses- So trial counsel has to depend on the idea that even though the trial court has said the evidence is sufficient, and my client is facing mandatory life without parole, the jury will disagree because I'm so right about the evidence here, and I'll win on appeal. Is that right? No. When I refer to the sufficiency of the evidence, I'm specifically referring to the without a firearm piece of the instruction, which is what's at issue here, and the record shows- Yeah, but you're saying it's unreasonable for the trial counsel to ask for that lesser included instruction because trial counsel should know that the jury can't convict my client on the greater offense. No, Your Honor. Because the evidence is insufficient. No, I'm arguing specifically that the lesser- the element of the lesser included offense about the use of the firearm had no basis in the record, so not of the greater offense of first-degree murder, that there was not sufficient evidence, and that's reflected in the record. The trial court and the prosecution all stated at the time that there isn't evidence to support giving this instruction, the instruction about no use of a firearm, and with limited time remaining, I would like to address the second certified issue. Well, before you do, I'm still having trouble understanding how counsel could have been- his performance could have been ineffective for asking for the lesser included. Let's talk about the second-degree murder with or without a firearm. When I looked at the schedule and the standard jury instructions, they're silent as to how to treat second-degree murder with and without a firearm. But there is some case law out there, and one in particular I wanted to cite for you and have you help me understand how to deal with it, and we're bound by intermediate appellate law in Florida if there's nothing from the Supreme Court on point. There's a case called Robertson. It came out of the 4th DCA, and the defendant was charged with second-degree murder with a firearm after she was involved in a struggle with the victim and the gun that was in her possession discharged and killed the victim. The defendant sought an instruction on second-degree murder without a firearm. The trial court said no. The verdict form gave a variety of options, but not that. The 4th DCA considered this error because it said an instruction on second-degree murder without a firearm, quote, would be a step down from second-degree murder with a firearm, and, quote, the defendant was entitled to have that considered. And it found that the lack of instruction on second-degree murder without the enhancement for use of a firearm was a grievous oversight and error. That's what the 4th DCA said. I couldn't find anything that went the other way. Conceitedly, there's nothing in the standard jury instructions or the schedule that answers the question. But if we're assuming that defense counsel was aware of Florida law, how could it have been ineffective to ask for that? Specifically from that case, we know that the error in that case is based on defense counsel's request for this instruction and it being denied. Here, the error is based in the fact that defense counsel requested that instruction in the first place. It gave the jury a new basis to find Mr. Carey guilty, and that's a basis that was not supported by the evidence and, if anything, only provided an alternate theory for which that was not presented by the state's case to reach a guilty verdict. Would your argument mean this? So, in any case where defense counsel asks for the lesser-included instruction and the client is convicted of that, then we're always going to get an ineffective assistance claim? No, Your Honor. If there's a clear strategic benefit to that request and if it's founded in a reasonable understanding of Florida law, then that would not be effective. Tell me how that arises because, as I understand your theory, it's this. The jury follows its oath, does not convict on the greater offense, instead convicts on the lesser-included, which, but for defense counsel's request, would not have been in the case, so the jury would have been obliged to acquit on the greater offense. How will there ever be a strategic benefit under your theory? Well, if there's a non-illusory benefit to the sentencing exposure and if it's founded in the evidence. Here, there's... How does that arise? As I understood your theory, your theory is that the jury was obliged to acquit on the greater offense because the evidence didn't support it. Otherwise, there wouldn't have been a conviction on the lesser-included, right? Right. How is it ever going to arise that there's a strategic decision that could support asking for the lesser-included offense every time there's a conviction for the lesser-included offense? I'll answer with an example. If a defendant is charged with second-degree murder and the defense's theory is that the state will not be able to prove the requisite mens rea for second-degree murder, it's, of course, effective assistance to request a manslaughter instruction as well, and the trial court would be obliged to give it. That would provide a benefit. And so then there's a conviction for manslaughter, right? And habeas lawyer argues, well, that shows I was right all along about the absence of mens rea for the second-degree murder charge, so my lawyer shouldn't have asked for that lesser-included charge because he would have been acquitted of second-degree murder, and the jury would not then have had the option of convicting him on the lesser-included offense, right? Well, the important question and the important distinction here is whether or not the instructed lesser offense has any basis in the evidence, and if it's possible to make a reasonable tactical decision that still assumes that the jury will follow its oath. If your argument at trial is that your client did not have the requisite mens rea... That's a different issue, though. So it seems to me that if the argument is that there was no basis for any conviction, then it's a sufficiency challenge. That's a different issue from whether it's deficient performance on the part of the defense lawyer to ask for a lesser-included instruction. To clarify, Your Honor, I'm specifically referring to the additional element that is introduced by... Not a question of sufficiency of the evidence generally for murder, but sufficiency of the evidence supporting the special jury verdict that was given by the jury in this case. They found that Mr. Carey did not use a firearm and did not discharge a weapon, did not carry a weapon in the course of this offense. That just is not possible by the record, and defense counsel would have known that going in. That is not a part of defense counsel's theory at trial, which distinguishes it from the other examples given. If it can be part of the defense's theory, then that, of course, would not be an effective deficient performance in order to make that request. Here, there's no basis to think that the jury could have reached that verdict because the element of without a firearm had no basis in the record. Okay, Mr. Vogel, you've been performing well and going well over, but you've been answering our questions, so you've saved some time for rebuttal. Let's hear from Ms. Salinas. I mean, I'm not Ms. Salinas. I apologize. Ms. Warner. Good morning. I have so many lawyers listed on the docket sheet, I got confused. I apologize. Ms. Warner. No problem. Good morning. May it please the court. Lindsay Warner, assistant attorney general on behalf of the state. As far as defense counsel's argument on deficiency, again, we would argue that the COA does not include deficiency, but if Your Honor would want to talk about it, that's absolutely fine. Is there any objection to us going ahead and expanding it? Both sides have briefed it. Correct, Your Honor. Your adversary doesn't object to that. I mean, it seems to me kind of pointless if we could affirm, for example, on deficient performance, then why send it back to go through that? And there does at least appear to be a problem with the district court's analysis of prejudice. And, Your Honor, the state would argue that, obviously, as Your Honor has pointed out, that when you have one and you can't prove the other, if you lose on either deficiency or prejudice, we can affirm and find there's no ineffectiveness. Right, but I think the thrust of the question is to be sure that neither party has an objection to the court expanding the COA. We've got case law out there that says kind of there ought to be an exceptional circumstance or a pretty powerful reason for us to expand the COA, and I think that's the reason the Chief Judge is asking whether you, as your colleague, has any objection to us going to deficient performance. I don't believe so, especially because it was briefed and based on that, Your Honor... And it was briefed before the trial court as well, right? I believe so. Counsel, and I believe the reason the district court did not address it is because there was no evidence your hearing held below as to obtained testimony, but I think on the face of the record, counsel was not deficient. First of all, opposing counsel relies on Butler v. State. Butler is completely inapplicable to the instant case. Butler involved essentially a special jury instruction, not standard jury instructions. Defense counsel relies on the law that says instructions should not be confusing, contradictory, or misleading. That is all related to special instructions, and standard instructions are presumed correct, and they are a correct statement of law. So the requested instructions here were not misstatements of the law. You know, we asked you in advance of OA to be prepared to address whether the instruction here was consistent with the standard instructions at the time... Yes, Your Honor. ...and the schedule of lesser-included offenses... Yes, Your Honor. ...applicable at the time. And you tell me the answer to that? Yes, sir. I do. You gave me a case. That doesn't really tell me the answer. Right. I did pull from the Florida Supreme Court. I was able to get a copy of the 2008 version of the Florida standard instructions at the time of trial in May, and it does list second-degree murder without a firearm and manslaughter without a firearm as the lessors of first-degree murder. It also listed robbery with a weapon, robbery without a weapon, and just simple petty theft as the lessors for robbery. Can you send us copies of that in your opposing counsel? I actually have copies. I have a copy of it if you'd like me to provide it now, or I can... You can just give it to Stephanie. Right, because the reason we were probing that question is, candidly, when I looked at it, I didn't see in the schedule or the standard instructions anything about how to treat second-degree murder with and without a firearm. The only thing I saw was case law that was on point, DCA, Intermediate Appellate Law. Yes, Your Honor. But not the standard jury instruction that was operative or the schedule. It seemed to me, and I may be in error here, that they just never talked to that issue. Am I wrong about that? I don't believe so, Your Honor, but the way it is, my understanding of it, is you have the actual charge, you have murder in the first degree, which is 7.2, and you have robbery with a firearm. Robbery with a firearm includes the firearm. That is the actual standard instruction, is the firearm. It's the murder that is the issue. Yes, because there's no question, I agree, robbery with and without a firearm, you find it right there. Right, so with murder... It's only homicide second degree with or without a firearm. Correct, because the way it's treated is it's an enhancement. It's a firearm enhancement. So you take 7.2, which is the murder standard instruction, and then you add Florida Standard Jury Instruction 3.3a, and that is the enhanced instruction, which is titled Aggravation of Name of Felony by Carrying, Displaying, Using, Threatening to Use, Attempting to Use a Firearm or Weapon, and that's consistent with Statute 775.087, subsection 1, which is what the defendant was charged with in this case in addition to the charge for the first-degree murder, and that's how you reach the murder with the firearm together. You have to merge those two instructions the same way you have to merge the two statutes. So you have to piece together A, B, and C to get D. Yes, sir. So murder, the lessors are second-degree murder and manslaughter without a weapon. Here, the state asks for... It just doesn't mention weapon one way or another. Correct, exactly. That's just what the lesser instructions are. Right, because with murder, you don't have to prove it with a weapon. You can strangle somebody with your bare hands. If it's premeditated, it's still first-degree murder. You don't need a weapon. Right. You just add the enhancement. And as far as Robertson, the state did supplement with that case on Monday when I was filing my Notice of Appearance as well because, Judge Marcus, you're absolutely right that Robertson is right on point with this case. You have murder with a firearm and... I'm sorry, he was charged with second-degree murder with a firearm, requested the murder without a firearm, and the court held that it was reversible error to not give that instruction because the jury has to be given the option to convict of the lesser. They have to be able to exercise their pardon power. And defense counsel relies on Sanders... That's back in the day when that was the case, right? So... But the Florida law has changed, right? Correct. But, Your Honor, it doesn't... The defense counsel's argument regarding the evidence not supporting a firearm was used or was not used, everyone agreed at trial that a firearm was used. Just because the jury came back and said a firearm wasn't used, juries use their pardon power. Juries split the baby, and we can't speculate as to why they did that. But the case law says, Thompson specifically, at page 312, which was a 5th DCA case, even if there is no evidence... I'm sorry, even if there's no evidence that no weapon or anything other than a firearm was used, so only the evidence is a firearm, you still have to give the instruction without a firearm, without that enhancement. And counsel was not deficient here because Graham and Miller hadn't come out yet, and the defendant was facing a life sentence. And if Your Honors look at Norris, which was cited in the briefs... A mandatory life. Yes, correct. Versus you have with the firearm is mandatory versus not with a firearm. So, of course, defense counsel's going to strategically try to have the jury come back without a firearm because he doesn't want his client being sentenced to mandatory life. But obviously not able to anticipate that Graham and Miller are going to be new Florida case law. In Norris, which was a Northern District case from 2016, the defendant was charged with second-degree murder and he was convicted of felony battery. And in his fed habeas, he argued that his counsel was ineffective for raising that felony battery instruction. However, first of all, the defendant did not object... The defendant himself did not object at trial, and the court held that counsel was not deficient because requesting that felony battery charge was reasonable and it was strategic to avoid a life sentence. Here, not only do you have that strategic decision, you have the defendant being specifically asked on the record, do you object? Do you understand that defense counsel's asking for these lessors? Yes. Do you understand that the state is... Or that, you know, we have these lessors? Yes. Are you in agreeance with that? Yes. And that's at the record for the murder lessors at the transcript at pages 1016 to 1017 and the robbery lessors for 1021 to 1022 when they were discussing the charge conference. He was explicitly asked and told the judge, I have spoken to counsel, everything was explained to me, and we can strictly... Yeah, but even so, I mean, if he had gotten ineffective assistance, you know, I'm not sure how much his agreement to his ineffective assistance would really help us. Well, his agreement goes to the language in Strickland which says that counsel's actions are usually based quite properly on the informed strategic choices made by the defendant and on other... Right, but that assumes that it's informed, right? And I know he said that it was explained to me, but we don't know exactly what was explained. No, Your Honor, we don't. So my point is simply the mere fact that he said that he was in agreement or that he... I'm not sure that really addresses the issue. And I don't think that it saves the day, but I just think it's a further point in support of the fact that counsel was not deficient. He acted as a reasonable trial counsel would to get a lesser for his client that the jury could come back with to exercise their pardon power. And as far as the prejudice prong... Before you get to that, just so that I'm clear about the record, I take it what happened was defense counsel asked for the lesser and the prosecutor had no objection. Is that right? No, Your Honor. Or did the prosecutor object? No, what happened was first the prosecutor... The court asked the defense attorney, do you want any lessers? And they said, no, we don't want any lessers. And the state said, we want the murder... Yes. Second-degree murder with a firearm and manslaughter with a firearm. And then defense counsel basically said, well, if you're going to ask for those, then we would ask for all the lessers. Right. Which would be without the firearm, without the enhancements. And to that the prosecutor had no objection. Correct. And even though everyone pretty much agreed that there was no evidence of anything other than a firearm used, it's still a Category 1 necessarily included lesser offense, which means the elements are subsumed. You can commit murder even if the jury comes back and says there was no firearm used. That doesn't mean a firearm wasn't used. And there's case law that explicitly says that, including Thompson, which I cited earlier. But... Yes. So even though the defense attorney asked for those instructions and everybody agreed that the only evidence showed there was a firearm, that doesn't mean that the jury couldn't come back with something other than a firearm. Which goes to my point about Sanders and how counsel's reliance on Sanders is misplaced. Sanders does not say what counsel is trying to say that it says. Counsel takes a line from the middle of the case, puts it in a vacuum and says that's the law. That basically, where the court said, although the jury is instructed about lesser included offenses, the instruction specifically allows the jury to consider a lesser included offense only if it decides the main accusation has not been proved beyond a reasonable doubt. And the way that Sanders explained that and was using that language is to show why you can't base prejudice on the speculative nature of the pardon power of the jury to acquit on charges when faced with those . . . The problem I have is that if the lawyer is deficient, if, okay, it's kind of hard . . . So that assumes the lawyer shouldn't have asked for the instruction, right? Right. That's what that means. Right. It's kind of hard then to say there's not prejudice, isn't there? I would not agree with that necessarily, Your Honor, because in Sanders, they assumed . . . This is part of why I think these two issues are so inextricably intertwined. Yes, and they definitely . . . It's really hard to think of this . . . It's a prejudice case in isolation. The deficient performance and prejudice are so tied together. Yes, Your Honor. And in Sanders, they did assume for purposes of the argument that the deficiency was proven. So they only addressed the prejudice prong. But the way that Sanders explained it, and it was actually very well articulated in another case from this court, Crasper, and they explained how the failure to request an instruction on a lesser included can't establish prejudice because they're based on the sole possibility of a jury pardon, which is what defense counsel is basically arguing. He is saying that the defendant would have been acquitted of all conduct and found not guilty had they only been . . . The trial judge said to the jury, you only get to the lesser if you find the evidence is insufficient on the greater. And the jury found he did not once, not twice, not three times, but seven times by my count that he didn't have a weapon, he didn't possess a weapon, he didn't shoot a weapon. So don't we have to accept that the jury followed the instructions of the court and only reached the lesser because it had concluded that the evidence was insufficient to establish the greater? We have to assume that the jury was instructed to follow the law, follow their oath, and follow . . . But wasn't that the specific law on the point that the judge had told the jury? Yes, and we have to assume that they followed the law, and that's why you can't use that to find speculation because you can never find prejudice based on speculation. Sanders explicitly said the pardon power of the jury, which Sanders disagrees with, it's basically a farce, there's no legal basis for it, it doesn't matter, it still exists, and they recognize that, the pardon power allows the jury to acquit a defendant of a greater offense and convict him of a lesser one even though the evidence supports both crimes. And that goes directly . . . But even so, I mean, on the prejudice analysis, if we look at the record, there's not a lot of evidence here. I mean, there's some circumstantial evidence, you know, he is able to explain why he has the two phones, the jury can choose to believe it or not believe it, but, I mean, it's not a completely ridiculous explanation where you would say there's no way anybody would believe this. The only real evidence, if you take that out, is there's a hair that matches his maternal DNA. But, I mean, it matches a lot of people's maternal DNA, and there are also other hairs there. I mean, it is a ski mask in Florida, which, you know . . . But still, it matches a lot of other people's DNA, and maybe he wore it for some other reason, who knows. The point is there's not a whole lot of evidence there. They can't . . . they don't match . . . They can't, because there's no casing, match the shot to the gun that is found. There's really nothing else. I mean, what else is there? So why wouldn't there be a showing of prejudice here? Because we can't go back and look into what the jury did. I understand that. I'm looking at the evidence. No, I understand that. But based on that, we can't speculate. I can't say. Your Honors can't say. But then we could never, ever make a finding of prejudice, if that's what the standard is. I think you have to look at what the evidence is, right? And then say, you know, is there a reasonable likelihood that the jury would have returned a verdict of not guilty? And I think that on this record, it's hard to say no. But Your Honor, the judge did fine and deny the motion for judgment of acquittal, which is when . . . That's a different question. I understand. But what I'm saying is that the judge found that there was sufficient evidence to send it to the jury, and the jurors came back. They had other options below. They could have found him guilty of manslaughter without a firearm. They didn't. They literally split the baby right in the middle. Second-degree murder is right in the middle of the charges. And if they found that, then they could have found the robbery without a weapon, because you have a kid, and they didn't want to convict him of a firearm offense for whatever . . . Okay, but now you're doing the speculating. Exactly, and that's what I was going to say. That is all speculative, and we can't go there yet. But that's speculating on your part. I mean, that's different than looking at the evidence and looking at what the decision here was, assuming just for purposes of this question, that there was deficient performance, and determining whether that might . . . whether there is a reasonable likelihood that assuming it was deficient performance, it might have affected the outcome. There's a reasonable probability that it would have affected the outcome, a reasonable likelihood. And, you know, that's always going to call for a certain type of, quote, speculation. But there's speculation, and there's speculation, right? I mean, we have to engage in that analysis. And if what you're saying is the case, we could never engage in that analysis, because by definition, it would always be speculation. And so, I guess I'm just asking you why that's not the case here. I think the district court pointed out to a very good line in Stevie Connolly, which was a Florida Supreme Court 1999 case that would relatively address this, is that you can have a jury verdict as a result of lenity, and verdicts do not always speak to the guilt or the innocence of a defendant. And we just can't know. But again, and I'm sorry, just one last point on this. I don't think you can say . . . by saying, we just can't know. Because that would always be the answer. You have to say, on this evidence, with this particular deficient performance, these are the reasons why there would not be a reasonable likelihood of a different verdict. Don't you have to do that? That's what I'm asking. I think that in a case like this, where they found the defendant guilty and they didn't come back with the very, very least crime, I don't think that we can go back and we can try to figure out what they did. I think that there was enough evidence . . . the state would argue there was enough evidence for the jury to find him guilty of what they did with a firearm, without a firearm. It doesn't go to whether or not a firearm was actually used, and there's case law that specifically says that. Okay. But as far as with the prejudice, as Your Honor's pointed out, and expanded the COA, it doesn't matter, because counsel wasn't deficient for relying on a strategic decision to inform the jury of a correct statement of law, which was the standard instructions. In one line, then, what you're saying, if I hear it right, is that if, indeed, counsel was not ineffective, there wouldn't be prejudice. I'm sorry, can you repeat that? If there was no deficient performance, there would be no prejudice. Yes, but I don't think that the opposite is true. If there was deficient performance, I don't . . . the state is not saying that there is prejudice. The state would still rely on . . . I understand. In the brief, that there is no prejudice. Thank you very much. Thank you, Your Honor. I apologize for going over. No, no. You are answering our questions. Mr. Vogel, you've saved three minutes. I'd like to specifically clarify where the deficient performance arose. If this was a case where just secondary murder with a firearm and manslaughter were the instructions given, this would not be . . . There is no such thing, though, right? There's second-degree murder. That's what the instruction would be under Florida law. Here, the record shows that the trial court and the prosecution had requested the instruction of secondary murder with a firearm. The case was going to proceed, but for defense counsel's request, with just that instruction given. The trial court resisted giving the . . . Let me ask you the question again, though. Am I right, though, that actually if you go to the standard instructions and you go to the schedule, the instruction's just going to be second-degree murder, right? There's no such thing as a second degree with a firearm in the instructions. There are separate verdicts for the jury to give, and the record . . . I'm not asking about the verdict. I'm asking about the instructions, the standard instructions. That is the standard instruction, but in this case, the trial would have proceeded without the language and without the verdict form presented to the jury that it ultimately reached the verdict on. The difference between secondary murder with a firearm and secondary murder without a firearm, which were the two charges that were before this jury, was entirely an illusory benefit to Demetrius. If the jury, as the state suggests, was splitting the baby here, they were providing only an illusory benefit, it's illusory lenity to Demetrius, and that's precisely why that it was deficient performance to provide that option to the jury that they would not have had otherwise. And with that understanding, I'll use one minute to speak on the second certified issue, which is that the state did not rely on . . . This is the only issue we've talked about on . . . You have to use rebuttal for actual rebuttal. Understood. Then I will continue to just note that what we know in this case is that the state did not prove its case beyond a reasonable doubt of first degree murder with a firearm or secondary murder with a firearm. Those were charges that were acquitted of. That is the foundation of prejudice here, because without those being possible for the state to have proven, the only reasonable probability of an outcome would be a step down to manslaughter or to an acquittal or to a hung jury, each of which would satisfy the prejudice prong of Strickland. But for trial counsel's decision, those would be the verdicts that would have been before the jury here. Because trial counsel made that request, we know that that's why we resulted in the verdict that we had, and that's why Demetrius was sentenced to life in prison. Okay. Thank you, Mr. Vogel. I want to say you did a really fine job this morning. Have you graduated? Yes, I graduated in May. In May. Well, congratulations. Thank you. And we wish you best in your career. We really appreciate the help of your clinic in this case, and you acquitted yourself very well. You're off to a great start in your career. And, Ms. Warner, I want to thank you again for – oh, he's a Michigan grad? That's right. Okay. Well done.